UNITED STATES *v.* MILL & MINE SUPPLY CO. (No. 4386)[1]

United States Court of Customs and Patent Appeals, December 26, 1942

*Paul P. Rao,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney, of counsel) for the United States.

*Eugene R. Pickrell (Eugene A. Chase* of counsel) for appellee.

[Oral argument December 2, 1942, by Mr. FitzGibbon and Mr. Chase]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

---

[1] C. A. D. 224.

BLAND, Judge, delivered the opinion of the court:

The appellee imported into this country from Germany, under the Tariff Act of 1930, merchandise invoiced as "Gas-driven Chain Saws" and "Guiding Bars for above Machines." The collector classified it as dutiable under paragraph 353 of the said tariff act at 35 per centum ad valorem. The appraiser had advisorily classified the merchandise as "35%—353 electric machines with spark plug & magneto."

The importer protested the classification and claimed the involved merchandise dutiable as "all other saws, not specially provided for" at 20 per centum ad valorem under paragraph 340 of the said act, or alternatively as "all other machines, finished or unfinished, not specially provided for" at 27½ per centum ad valorem under paragraph 372, or at 10 or 20 per centum ad valorem under paragraph 1558.

The United States Customs Court, Second Division, sustained the claim in appellee's protest that the involved saws were dutiable at 27½ per centum under said paragraph 372 and overruled all others. From the judgment of the trial court the Government has here appealed.

The appellee filed no cross-appeal and is therefore not in a position to urge here the applicability of any paragraph of the said tariff act other than 372—the machine paragraph.

The issue for this court to determine, therefore, is whether or not the saws should be classified for duty under the third provision of said paragraph 353 and the guide bars under the last provision of that paragraph or whether they are properly classifiable under said machine paragraph 372.

. The pertinent statutory provisions read:

PAR. 353. All articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy;

electrical telegraph (including printing and typewriting), telephone, signaling, radio, welding, ignition, wiring, therapeutic, and X-ray apparatus, instruments (other than laboratory), and devices; and

articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs;

all the foregoing, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for, 35 per centum ad valorem.

PAR. 372. * * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: *Provided*, That parts, not specially provided for, wholly or in chief value of metal or porcelain, of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts: * * *.

Photographs of the involved merchandise were introduced in evidence, and it was stipulated between the parties "that the imported saw is driven by a single cylinder gasoline motor, which is shown in Collective Illustrative ExhibitA; that attached to this motor are a spark plug and a magneto with the necessary connecting wiring; that

the spark plug, magneto, and wiring, are the only electrical elements of the imported merchandise, and are used to produce the spark necessary for the ignition of the fuel in the gasoline motor; and that this saw is a mechanically operated saw used in lumbering."

It is the contention of the Government that the gasoline motor, which furnishes the propelling or operating power for the saw, could not function unless electric current were transmitted to the gasoline in the combustion chamber and that therefore the spark plug, magneto, and wiring fall within the provision as being an electrical element or device which is an *essential feature*. The Government attempts to distinguish the various cases relied upon by the appellee and the case relied upon by the court below from the facts involved here. For instance, it points out that *John A. Steer & Co.* v. *United States*, 24 C. C. P. A. (Customs) 293, T. D. 48737, relied upon by the trial court, differed in material facts from the case at bar in this, to wit: in the *Steer* case the machine as imported consisted of an anhydrous ammonia plant to be operated by an electric motor, which motor did not accompany the importation. The apparatus was started by heating the gases introduced therein, by means of two electrical heating units, which were turned off after the apparatus had become warm enough for the ammonia reaction to start. When the reaction was once started, the device was self-perpetuating and no longer required the aid of the electrical heating units. The question there presented was whether or not the two electrical heating units brought the plant under paragraph 353 for duty purposes.

The Government points out that in the instant case the magneto, which furnishes the electric current through the wiring to the spark, must be in continual operation while the gasoline motor is running, and the machine is being operated. The Government has cited no case which it urges as being directly in point in the instant appeal except an abstract decision of the United States Customs Court, *Shell Oil Co.* v. *United States*, Abstract 29374, 66 Treas. Dec. 1089.

We have, on a number of occasions, had the various provisions of said paragraph 353 under consideration. It is true that the facts in each case differed considerably from those at bar. However, after considering the legislative history of the paragraph and the stated purpose which Congress had in mind (see *Ralph C. Coxhead Corp.* v. *United States*, 22 C. C. P. A. (Customs) 96, T. D. 47080) when it carved out of various paragraphs of the 1922 tariff act the so-called electrical paragraph, 353, we held that for an article to fall within the here-controverted provision of paragraph 353, the article must be essentially an electrical one. It will be noticed that after providing for an *electrical element or device* as *an essential feature*, Congress gave some examples, "such as electric motors, fans, locomotives,

portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs." It has never been controverted by anyone in connection with the previous cases decided by this court, nor is it questioned here, that the word "electric" modifies not only "motors" but also each of the names of the other articles in that provision.

The Government urges that this article is *ejusdem generis* with the articles named because among them are portable tools, and it contends that the instant article is a portable tool. It is obvious, however, that the article is not an *electric* portable tool. If it is a portable tool, it is a gasoline portable tool.

In the case of *United States* v. *Dryden Rubber Co.*, 22 C. C. P. A. (Customs) 51, T. D. 47050, there was involved a large machine with horizontal band saws for removing slices of rubber from a rubber cake. When imported, the machine was accompanied by an electric motor, and there was a proper place upon the frame for mounting the motor. This motor operated the saw and caused the device to function. We held that the machine there was "essentially an electric machine, designed and used as such." No consideration was taken of the small motor which operated emery wheels. We there said:

On the other hand, if, when the article is imported, it is so constructed as to utilize electrical power solely, and, therefore, is, essentially, an electrical article, and its various parts are imported, are intended to be used, and are used, together, as was the case with the imported merchandise, then no reason can be seen why it should not be considered, for dutiable purposes, within the scope of the third division of this paragraph, for in such case, we think the article should be held to be included within the class of articles named in the paragraph.

\* \* \* \* \* \* \*

We are then brought to the inquiry whether the imported machine for cutting rubber was a machine such as was intended to be included within this subparagraph. The machine is a horizontal band saw of moderate size and is such a device as could be easily moved from place to place. In view of the very evident intent of the Congress to gather, generally, various types of electrical devices into this paragraph, it is believed that this machine, if essentially an electrical machine, may properly be considered as of the class to which the stated language of the paragraph refers.

In *United States* v. *Pyrometer Instrument Co.*, 21 C. C. P. A. (Customs) 376, T. D. 46910, the there-involved merchandise was optical measuring and testing instruments used for ascertaining the degree of heat in objects. In the front end of the instrument there was an eyepiece containing a lens. In the instrument was an electric dry cell connected with a light bulb. The light illuminated the target. In holding that the pyrometers did not fall within paragraph 353 as having as an essential feature an electrical element or device, we took into consideration the articles specifically enumerated and said:

It will be observed that said paragraph 353 enumerates a number of the articles which are intended to be included therewithin, "such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs." We are unable to conclude that these pyrometers, where the only function of the electric element is to emit light, is "such as" or like, any of the articles enumerated in the paragraph. In said enumeration, the articles are such as receive their operating power from electric current, and which are commonly designated as electrical equipment, such as electric fans, or electric heaters, or electric locomotives. Here, however, the electric bulb and battery perform no function except to serve as a basis for the comparison which the eye makes, by use of the instrument.

In the *Steer* case, *supra*, involving the anhydrous ammonia plant, the court followed its decision in the *Dryden Rubber Co.* case, *supra*. It reviewed the legislative history of the provision and again emphasized the holding that only articles which were essentially electrical in character were covered by the provision and further stated that gasoline automobiles and oil burners for furnaces, with ignition spark plugs, although containing electrical starting devices, would not be electrical devices, but gasoline and oil machines, respectively, and used the following language:

* * * Such devices would still be gasoline automobiles and oil furnaces. In other words, they would not be electric machines, and the articles, to be classified under the third subdivision of said paragraph 353, are, as we said in the *Dryden Rubber Co.* case, *supra*, required to be electric machines; that is, machines where *the essential operating power of the device is electricity*. [Last italics supplied.]

So, in view of the above holdings, it seems that in determining whether or not the stated electrical elements in the machines at bar constitute essential elements within the meaning of the controverted provision, we must ascertain whether the gasoline saws are essentially electric saws. Obviously they are not. Notwithstanding the fact that in this kind of machine the internal-combustion engine would not work unless it had an electric spark (and to that extent the electric spark may be essential) it is not the character of device that Congress contemplated taking out of other tariff provisions and placing in paragraph 353.

We think our above-expressed views are supported by consideration of the doctrine of *ejusdem generis*. Nothing named in the paragraph has characteristics similar to those of the machines at bar. All those articles named are modified by the term "electric," and no one would presume to call the instant gasoline-operated saw an electric saw. Under the contention of the Government, a gasoline outboard motor, if not more specifically provided for elsewhere, would fall into the same classification as electrically operated outboard motors.

With respect to the case of *Shell Oil Co.* v. *United States*, *supra*, relied upon by the Government as supporting authority for its con-

tentions in this case, we are clearly of the opinion that the holding there is not in harmony with any of the views expressed by this court. The trial court, in an earlier abstract decision, Abstract 25296, 64 Treas. Dec. 908, had held that an internal combustion gas engine equipped with an electric magneto came within the provisions of paragraph 353 as an article for producing electrical energy. It later, in said Abstract 29374, modified its former decision and held that the engine was dutiable under said paragraph 353 as an article having as an essential feature an electrical element or device. The court stated:

On the record presented the court was convinced that the mechanisms in question are dutiable at 35 percent ad valorem under paragraph 353 as articles having as an essential feature an electrical element or device. *United States* v. *Dryden Rubber Co.* (22 C. C. P. A. 51, T. D. 47050) and *Coxhead* v. *United States* (id. 96 T. D. 47080) cited.

We do not think either the *Dryden Rubber Co.* case or the *Coxhead* case supports the findings of the court in said abstract decision. Moreover, it is noted that the latter holding of the United States Customs Court, Second Division, Judge Dallinger writing the opinion, is the direct opposite of the holding by the same division of said court, written by the same judge, in the instant case, wherein the *Steer* case, *supra,* is relied upon. The *Steer* case was handed down by this court subsequent to the holding in said Abstract 29374.

Appellant makes a contention based upon the language used in the trade agreement with the United Kingdom, T. D. 49753. Said language reads:

Internal-combustion engines having as an essential feature an electrical element or device, finished or unfinished, wholly or in chief value of metal, and not specially provided for: * * *.

If we were considering a construction of the language of the said trade agreement, we would have a different question from that at bar. That agreement, however, does not apply to importations from Germany, by reason of the Presidential proclamation which excludes German merchandise from the benefits accorded in trade agreements (T. D. 49752). Therefore, we need give this matter no further consideration. Cf. *Marks Brothers, Inc.* v. *United States,* 30 C. C. P. A. (Customs) 35, C. A. D. 210.

It is our view that the trial court properly held that the gas-driven saws and parts are not dutiable under paragraph 353 but are classifiable under paragraph 372 as "all other machines" and "parts." The judgment of the trial court sustaining appellee's protest is *affirmed.*